**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Beth L.,  )<br>  )<br>     Plaintiff,  )<br>  )<br>     v.  )<br>  )<br> Frank Bisignano,  )<br> Commissioner of Social Security,  )<br>  )<br>     Defendant.  ) | Case No.: 24-cv-50475<br><br>Magistrate Judge Margaret J. Schneider |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Beth L., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, Plaintiff's motion to reverse and remand the Commissioner's decision [17] is denied and the Commissioner's motion for summary judgment [21] is granted.

**BACKGROUND**

**A.  Procedural History**

On September 2, 2021, Beth L. ("Plaintiff") filed an application for disability and disability insurance benefits. R. 139. Plaintiff alleged disability beginning on December 15, 2020. *Id.* Her application was denied initially, and by an Administrative Law Judge ("ALJ") decision dated October 3, 2022. R. 139-148. Plaintiff sought review and the Appeals Council vacated the hearing decision and remanded. R. 155-57. In its remand order, the Appeals Council directed the ALJ to consider unadjudicated portions of the prior decision and all opinion evidence. *Id.*

On August 2, 2023, pursuant to the remand order, ALJ Edward P. Studzinski held a telephonic hearing. R. 17. Plaintiff appeared, testified, and was represented by counsel. *Id.* At the hearing, an impartial vocational expert, Thomas Gusloff, also testified. *Id.* Finding that Plaintiff's present application alleged an onset date prior to the January 14, 2021 initial determination date, the ALJ reopened Plaintiff's claim. *Id.* The ALJ also considered the Plaintiff's conditions during periods since the prior hearing decision. *Id.*

On November 1, 2023, the ALJ issued his written opinion denying Plaintiff's claims for disability insurance benefits. R. 17-30. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented

to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [15]. Now before the Court are Plaintiff's brief in support of her motion to reverse and remand the Commissioner's decision [17], the Commissioner's motion for summary judgment and response to Plaintiff's brief [21], and Plaintiff's reply brief [22].

### B. The ALJ's Decision

In his ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 23, 2020. R. 20. At step two, the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar spine degenerative disc disease, osteoarthritis, and obesity. R. 20-21. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 22.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work; can lift or carry up to 20 pounds occasionally and 10 pounds frequently; can stand or walk for a total of about 6 out of 8 hours; can sit for a total of about 6 out of 8 hours; needs to alternate her position between sitting, standing, and walking for no more than five minutes out of every hour; requires a cane at all times when walking for longer than five minutes; can occasionally climb ramps and stairs and can occasionally stoop, kneel, balance, crouch, and crawl except can never climb ladders, ropes, or scaffolds; can perform fine and gross manipulation frequently but not constantly, and is incapable of forceful grasping or torquing; and is limited to working in non-hazardous environments. R. 22-29. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 25. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including routing clerk, mail clerk, and marker. R 29-30. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since September 23, 2020, the date the re-opened application was filed. R. 30.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*,

529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified) (citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues that substantial evidence did not support the ALJ's RFC determination of light work. Specifically, Plaintiff contends that the ALJ played medical doctor and failed to build a logical bridge in (1) his analysis of the medical opinions; (2) assessing Plaintiff's postural limitations; and (3) determining Plaintiff's manipulative limitations. The Court finds that the ALJ properly evaluated the medical opinions, Plaintiff's postural limitations, and Plaintiff's manipulative limitations. The Court concludes that the ALJ supported his findings with substantial evidence and affirms the ALJ's decision.

### **Medical Evidence**

When determining a claimant's RFC, an ALJ must "evaluate the intensity and persistence of [a claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p. In this case, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record" and concluded that Plaintiff could perform light work with certain postural limitations. R. 22-24. According to the Social Security regulations, a job is classified as "light work" if it "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967. A person capable of light work can perform a job which requires "a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id*.

The ALJ determined that Plaintiff was able to perform light work with certain postural

limitations after considering Plaintiff's alleged limitations and the medical evidence. R. 23. The ALJ also found persuasive the medical opinions of two state agency medical consultants, Dr. Vittal Chapa and Dr. Ranga Reddy, who opined that Plaintiff was able to perform light work with some postural limitations. R. 28. The ALJ found these opinions generally persuasive because they were "corroborated with the objective medical evidence in the record." *Id*. The ALJ found unpersuasive the medical opinion of Dr. John Peterson, who found a sedentary RFC and opined that during an 8-hour workday Plaintiff would only be able to sit for six hours and stand/walk for less than two hours; that she could occasionally climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, or crawl; and frequently kneel or crouch. *Id*. The ALJ found this opinion unpersuasive because "[a]dditional evidence submitted at the hearing level that was not available to the state agency, was more consistent with a light residual functional capacity." *Id*.

In evaluating disability claims, ALJs "need not 'defer or give any specific evidentiary weight' to any medical opinion." *Evonne R. v. Kijakazi*, No. 20 CV 7652, 2022 WL 874650, at *3 (N.D. Ill. March 24, 2022) (quoting 20 C.F.R. § 404.1520c(a), 416.920c(a)). Nevertheless, ALJs must consider all medical opinions and analyze them based on certain factors including supportability and consistency. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). In reviewing an ALJ's analysis of a medical opinion, "a 'logical bridge' remains the touchstone of judicial review." *Evonne R.*, 2022 WL 874650, at *5. An ALJ "must consider the regulatory factors and explain why a medical opinion is not supported or is not consistent with the record to give a reviewing court the bridge to connect the outcome to the record." *Id*.

Plaintiff argues that the ALJ's evaluation of Dr. Peterson's opinion was not supported by substantial evidence and that the medical record does not support the ALJ's preference for Drs. Reddy and Chapa's opinions. Plaintiff claims that her continued complaints of neuropathy, pain in her legs, and balance issues did not support favoring Drs. Chapa and Reddy's opinions over Dr. Peterson's. Additionally, Plaintiff contends that the ALJ's preference for Drs. Chapa and Reddy's more recent opinions were unsupported due to a later physical therapy evaluation that found that she had a forward trunk lean. R. 1715, 1717. The Court finds no error in the ALJ's analysis of the medical opinions.

The ALJ noted that he considered Plaintiff's symptoms to the extent they were reasonably consistent with the objective medical evidence, medical opinions, and prior administrative medical findings. R. 23, 26. The ALJ cited Drs. Chapa and Reddy's opinions as more consistent with and supported by "the objective medical evidence in the record available to them at the time they rendered their opinions." R. 28. In support, the ALJ noted that after Plaintiff's 2020 surgical procedures, the majority of the medical treatment Plaintiff received did not reflect disabling symptoms or limitations and she could walk with a normal gait. R. 26. Specifically, the ALJ noted that medical records after the procedures "do not describe disabling symptoms or limitations twelve months after September 2020." *Id.* For example, the ALJ noted that a 2021 emergency department physical exam report stated that the Plaintiff had no neurological or sensory deficits. R. 616-17. Additionally, the ALJ noted that Plaintiff denied dizziness or vertigo symptoms during her appointments in August and October 2022. R. 26, 1386, 1401, 1748. Although the ALJ's discussion of the opinions of Drs. Chapa and Reddy's was short, his accompanying analysis of these more recent medical records, which the ALJ found to be consistent with the opinions,

explains his reasoning. With respect to Dr. Peterson's opinion, the ALJ explained that additional evidence that was not available to Dr. Peterson at the time of his January 21, 2021 assessment was more consistent with light work. R. 28. Given that more recent evidence after Plaintiff's 2020 surgeries reflected improvement in her functioning, it was reasonable for the ALJ to find the opinions of Drs. Chapa and Reddy persuasive and Dr. Peterson's opinion unpersuasive.

### Postural Limitations

Plaintiff claims that the ALJ erred by imposing more restrictive limitations than those recommended by state agency consultants.[1] Specifically, Plaintiff makes an undeveloped argument that the ALJ placed arbitrary limitations by including her need for a cane when walking for more than five minutes but stopping short of providing for a cane when standing. As to the greater limitations imposed by the ALJ, the Court finds no error.

To the extent Plaintiff suggests that the ALJ "played doctor," the Court finds Plaintiff's objection misdirected. ALJs do not need to rely on any specific medical opinion. *See Poole v. Colvin*, No. 12 CV 10159, 2016 WL 1181817, at *8 (N.D. Ill. March 28, 2016). In considering Plaintiff's need for a cane, the ALJ noted that there was "no evidence of an acceptable medical source . . . stating that [the cane] was medically necessary." R. 27. However, the ALJ acknowledged Plaintiff's peripheral neuropathy and obesity as reasons to partially credit Plaintiff's testimony and provide for a cane when walking for more than five minutes. *Id.* The ALJ's decision was appropriately based on Plaintiff's statements, her medical records, and medical opinions regarding Plaintiff's functional limitations. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859-60 (7th Cir. 2023) (stating that the ALJ's "careful consideration" of the evidence was "shown by the fact that he departed from the residual functional capacity recommended by the state agency physicians . . . based on his independent review of the full evidentiary record"); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (stating that an ALJ's RFC finding that "was more limiting than that of any state agency doctor or psychologist" illustrated "reasoned consideration given to the evidence [the claimant] presented").

As to Plaintiff's argument that the ALJ should have gone further and provided for the use of a cane while standing, the Court finds the ALJ's RFC supported by substantial evidence. Plaintiff argues that by failing to provide for a cane while standing, the ALJ disregarded Plaintiff's prior testimony of and treatment for vertigo, headaches, and a physical therapy examination. R. 50-52, 1715. However, as stated above, the ALJ considered Plaintiff's testimony and medical history but found that the record only partially supported her need for a cane. R. 24-28. Given the lack of support in the medical record for the use of a cane when standing but partial support for assisted walking, the ALJ did not play doctor or place arbitrary restrictions in his RFC determination.

---

[1] Plaintiff's arguments on postural and manipulative limitations are undeveloped and therefore waived. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)); *see Olivas v. Saul*, 799 Fed. Appx. 389, 392 (7th Cir. 2019). The Court nonetheless addresses the arguments on the merits to the extent it can discern Plaintiff's arguments on these issues.

**Manipulative Limitations**

Plaintiff contends that the ALJ played medical doctor and failed to provide a logical bridge between the evidence and the RFC in his determination that Plaintiff can frequently reach, handle, and perform fine manipulations bilaterally. Under the Social Security regulations, ALJ's must assess medical evidence to determine a claimant's RFC. *See* 20 CFR §§ 416.945, 416.920c. They do not "play doctor" by performing this function. *Heather M. v. Berryhill*, 384 F. Supp. 3d 928, 935 (N.D. Ill. 2019) ("Assessing medical evidence was not 'playing doctor'—a stock error of which plaintiff accuses the ALJ.") (citation modified). Moreover, while Plaintiff cites to deficiencies in the ALJ's opinion and hypotheticals to the vocational expert, Plaintiff does not otherwise cite any medical evidence in the record that supports greater manipulative limitations. Without any additional medical opinion, Plaintiff cannot prove harm because she cannot point to any limitation that the ALJ should have included but did not. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address [plaintiff's] limitations . . . because he hypothesizes none.").

Plaintiff may point to Dr. Roopa Karri's 2021 consultative examination, but the ALJ's assessed limitations were consistent with Dr. Karri's finding, which documented 4/5 grip strength bilaterally and that Plaintiff could still make fists and oppose fingers. R. 2184. The state agency doctors saw this report and did not assess any manipulative limitations. R. 125, 132, 173. Nonetheless, the ALJ interpreted Dr. Karri's assessment to mean that Plaintiff has "mild hand limitations," which he weighed against her claims of "hand and grip weakness." R. 26-27. Ultimately, the ALJ concluded that the RFC he assessed "reflects the inconsistency found between the allegations and evidence in the record" and concluded that the limitations imposed "are supported by the record, but no greater or additional limitations are justified." R. 28-29. Given all this, the Court finds that the ALJ's manipulative limitations determination was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse and remand the Commissioner's decision [17] is denied and the Commissioner's motion for summary judgment [21] is granted.

Date: September 16, 2025                                ENTER:

*Margaret J. Schneider*
United States Magistrate Judge